

DA 07-0631

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 1

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

FORREST SCOTT SMART,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2006-239
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Jim Wheelis, Chief Appellate Defender, Koan Mercer, Assistant Appellate
Defender, Helena, Montana

        For Appellee:

            Hon. Steve Bullock, Montana Attorney General, Mark W. Mattioli,
Assistant Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney, Ann-Marie McKittrick,
Deputy County Attorney, Billings, Montana

Submitted on Briefs:  October 29, 2008

Decided:  January 6, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Forrest Scott Smart (Smart) entered a guilty plea in Montana's Thirteenth Judicial District Court to two counts of sexual intercourse without consent. The District Court accepted the State's recommendation and sentenced Smart to twenty years in the Montana State Prison (MSP) with ten years suspended. The court also imposed numerous conditions on the suspended portion of Smart's sentence. Smart appeals the imposition of the condition requiring annual polygraph testing and the conditions imposing drug and alcohol prohibitions. We reverse in part and affirm in part.

## ISSUES

¶2    The issues on appeal are:

¶3    Did the District Court err in requiring polygraph testing as a condition of Smart's suspended sentence?

¶4    Did the District Court err in imposing drug and alcohol prohibitions as conditions of Smart's suspended sentence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    In March 2006, Smart was charged with numerous counts of sexual intercourse without consent, one count of felony intimidation, and one count of felony witness tampering. These charges stemmed from accusations by two young girls, one of whom was Smart's niece, who alleged that he had sexually abused them for several years. Smart subsequently entered into a plea agreement to two counts of sexual intercourse without consent and the State agreed to dismiss the remaining charges. With the

2

exception of two irrelevant conditions, the plea agreement did not address conditions to be imposed during the suspended portion of Smart's sentence.

¶6 On October 29, 2007, the District Court held a sentencing hearing at which the parties presented arguments regarding probation conditions. At the hearing, Smart objected to the proposed imposition of a polygraph testing condition on the grounds that polygraph test results are not admissible in Montana's courts and that his health problems would make such testing particularly unreliable. He also objected to imposition of prohibitions on drinking and drug use and on entry into bars because these conditions lacked a factual nexus to his offenses. The District Court nonetheless imposed these challenged conditions when it sentenced Smart to twenty years at MSP, with ten years suspended. Smart appeals the three challenged probation conditions.

## STANDARD OF REVIEW

¶7 We review challenges to sentencing conditions using a two-prong test. First, we review for legality; then, because § 46-18-201(4)(o), MCA, authorizes sentencing judges to impose conditions on deferred or suspended sentences that constitute "reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society," the "reasonableness" of such conditions will be reviewed for an abuse of discretion. *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, ¶ 9, 179 P.3d 1164, ¶ 9.

## DISCUSSION

¶8 *Did the District Court err in requiring polygraph testing as a condition of Smart's suspended sentence?*

3

¶9 As noted above, at the sentencing hearing, the District Court imposed a condition that required Smart to "submit to annual polygraph testing, *if requested as part of Sex Offender Treatment or Aftercare.*" (Italics in original.) Smart objected but the court overruled his objection. On appeal, Smart argues that Montana law prohibits the use of polygraph results in judicial proceedings; therefore, imposition of this requirement was illegal. As an illegal condition, Smart asserts, it should be stricken.

¶10 The State argues that polygraph testing of sexual offenders helps treatment providers overcome high rates of dishonesty, denial and minimization among the offenders. Relying on *State v. Fogarty*, 187 Mont. 393, 610 P.2d 140 (1980) (*overruled in part on other grounds, State v. Burke*, 235 Mont. 165, 171, 766 P.2d 254, 257 (1988)), the only Montana case at the time this appeal was presented that dealt with polygraph testing as a condition of probation, the State argues that the polygraph testing imposed on Smart was lawful. In *Fogarty*, we explained that only an offender's probation officer, not the county attorney or police, can request a polygraph examination, and adverse examination results, "in and of themselves," should not be sufficient to cause the revocation of probation. *Fogarty*, 187 Mont. at 417, 610 P.2d at 154.

¶11 While the State appropriately points us to *Fogarty*, we addressed this issue more recently in *State v. Hameline*, 2008 MT 241, 344 Mont. 461, 188 P.3d 1052. In *Hameline*, after summarizing relevant cases in which we held that polygraph examination results were not admissible in court proceedings or sentencing hearings, we held that a district court may impose a polygraph examination requirement on a defendant for sex offender treatment purposes. We noted that Hameline presented no authority under

4

which "we have held that requiring a person to undergo a polygraph test is, in and of itself, illegal," nor did he cite legal authority prohibiting a court from requiring therapeutic polygraph testing. *Hameline*, ¶¶ 19-20.

¶12 We further noted in *Hameline* that, as a condition of Hameline's probation, the district court required Hameline to be in either an approved and certified sex offender treatment program or an aftercare program during the entirety of his sentence. *Hameline*, ¶ 20. Similarly, Smart is required to remain in Aftercare or Relapse Prevention Class for the entirety of his supervision unless expressly released by his probation officer and therapist. Under *Fogarty* and *Hameline*, we conclude the District Court did not err in imposing a therapeutic polygraph testing condition on Smart's sentence.

¶13 *Did the District Court err in imposing drug and alcohol prohibitions as conditions of Smart's suspended sentence?*

¶14 Smart argues that the District Court's inclusion of drug and alcohol prohibitions was erroneous because such conditions have no nexus to his offense or to him as an offender. He asserts that a sentencing court may impose only those probation conditions "reasonably related to the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202(1)(f), MCA. He maintains, and the State does not dispute, that he has no substance abuse problems and that his offenses were not related to substance abuse. The Pre-Sentence Investigation corroborates Smart's claim and states that neither the current charges nor his arrest records indicate that any prior offenses were related to the use of illegal drugs or alcohol. Smart argues that the imposition of these conditions was impermissible, invalid and an abuse of the District Court's discretion.

5

¶15   The State counters that requiring a recidivist sex offender to refrain from alcohol use is reasonably related to rehabilitation and public safety. It asserts that "[t]he issue is not whether Smart can control his alcohol use; the issue is whether he should be given the right to consume a substance that is known to reduce sexual impulse control, even when consumed in moderate amounts." The State maintains that such a restriction is well within the bounds of reason and should be affirmed.

¶16   Again, we have recently decided a relevant case, *State v. Krueger*, 2008 MT 265, 345 Mont. 147, 190 P.3d 318. Krueger, after entering a guilty plea for felony sexual assault, appealed the sentencing court's imposition of alcohol restrictions. We noted that "nothing in the record ties alcohol use to the sexual assault offense." *Krueger*, ¶ 7. Additionally, Krueger's PSI stated that Krueger was "not much of a drinker" and that alcohol was "never a problem." *Krueger*, ¶ 7. Relying on *Ashby*, we reversed the alcohol-related condition stating that, like Ashby, Krueger did not use alcohol during the commission of his offense and he had no history of alcohol abuse. We opined that such a restriction was not justified on the ground of rehabilitation because the sentencing court cannot "rehabilitate a non-existing problem." *Krueger*, ¶¶ 9-10. As in *Krueger*, the District Court here did not establish a nexus between alcohol abuse and Smart's crimes nor did it establish a nexus between any of Smart's personality traits and the use of alcohol by him. Under these circumstances, the District Court erred in imposing the alcohol-related restriction.[1]

**CONCLUSION**

---

[1] In any event, use of illegal drugs is a crime in and of itself.

¶17 Having determined that the alcohol-related restrictions are not "reasonably related" to Smart's sexual offenses nor are they necessary to promote rehabilitation since Smart does not have a history of significant or chronic alcohol abuse, we reverse and remand with instruction to the District Court to strike the alcohol conditions from Smart's sentence. However, we affirm the inclusion of the polygraph examination for the reasons set forth above.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS